IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ERNEST M. ESPARZA, | Cv. NO. 07-00375 SOM-LEK |
| Plaintiff, | |
| v. | **DECLARATION OF ARTHUR E. ROSS** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## DECLARATION OF ARTHUR E. ROSS

I, ARTHUR E. ROSS, declare that:

1.  I am an attorney licensed to practice law in the State of Hawaii. I was court appointed counsel for ERNEST M. ESPARZA in CR. NO. 03-00127 SOM 01 and on direct appeal in U.S.C.A. 05-10419.

2.  I have personal knowledge of the matters herein, except and unless my knowledge is stated to be upon information and belief.

**A. Background.**

3.  This case involved allegations that Esparza was involved with co-defendant Ojeda in a drug conspiracy with related firearms.

4.  I began my representation of Esparza on or about August 28, 2003. Prior to this, attorney Alvin Nishimura represented

1

Esparza.

5.  While represented by prior counsel, Esparza met with the government to cooperate and inform them about persons he was aware were trafficking drugs.

6.  After I was appointed two more debriefs took place; however no plea agreement for Esparza was reached while Ojeda was maintaining his not guilty stance.

7.  During the ten months from my initial representation to change of plea, I met with Esparza several times, and spoke with him by telephone four or five times.

8.  Instead of being allowed to enter a plea agreement, Esparza was initially forced to prepare for trial, until Ojeda finally decided to plead guilty. In early June of 2004 Ojeda Esparza were offered the same plea agreement. Esparza felt trapped into accepting the deal because of the strong possibility that Ojeda would testify against him, which carried a risk of an additional ten year sentence for having access to Ojeda's AK-47.

9.  Esparza attempted to cooperate with law enforcement since his arrest and provided significant information about several of Ojeda's suppliers and confederates. In my opinion, Esparza was instrumental in getting co-defendant Ojeda to plead guilty when he met him at a trial status conference at the U.S. Marshal's Office and convinced Ojeda that two witnesses would testify against him. **See**, Sent'g Memo at p. 5.

10.  In June 2004 both Esparza and Ojeda moved to change their pleas to guilty. On June 14, 2004, the prosecutor filed a six-count superseding Information charging Esparza with (1) conspiracy to distribute and possess with intent to distribute in excess of 50 grams of methamphetamine; (2) possession of a firearm during and in relation to the drug trafficking crime charged in Count 1; and (3) possession of a firearm by an unlawful drug user.

11.  On June 14, 2004, during a joint Rule 11 hearing, both Esparza and Ojeda entered their guilty pleas pursuant to their respective plea agreements. During the colloquy the prosecutor stated the statutory penalties: the **Count 1 drug conspiracy charge included imprisonment of at least 10 years and up to life;** the Counts 3 and 5 (one against each co-defendant) charges of possession by a drug user of the same AK-47 carried a maximum of 10 years; for the Counts 2 and 4 (one against each co-defendant) charges of using or carrying a firearm in connection with a drug trafficking offense each co-defendant would be subject to a minimum sentence of five years, to be served consecutively to any other sentence of imprisonment imposed.

12.  Esparza's plea agreement ("PA") was filed June 14, 2004. In it Esparza agreed that he understood the charges against him in the Third Superseding Indictment and in the to-be-filed Information. Appellant's PA contained a factual

stipulation that the methamphetamine involved in Count 1 of the Information was identified as 2,477 grams of "pure" methamphetamine. No offense level stipulation was associated with this factual stipulation. There were offense level stipulations associated with the firearms offenses charged in Counts 4 and 5. Appellant's PA also contained an appeal waiver.

13. A draft Pre-Sentence Report ("PSR") was prepared on August 17, 2004. The probation officer calculated that, after a three-point decrease for acceptance of responsibility, Appellant's total offense level was 35. At criminal history ("CH") I level of 35 yields a guideline range of 168 to 210 months.

14. I filed a sentencing statement on August 31, 2004, in which I argued that Esparza was entitled to a mitigating role adjustment of at least two guideline points; in my opinion the evidence showed that Esparza was no more than a minor participant in the conspiracy headed by Ojeda and that he was "substantially less culpable" than Ojeda. (In the event the minor role adjustment was granted Esparza's BOL would have been 32 and the adjusted GL level 27 (70-87 months).

15. I also pointed out that "[w]ere it not for the presence of the Makarov pistol in [Esparza's] Isuzu and the AK-47 in Ojeda's bedroom, neither of which firearms played any role in furthering [Esparza's part] of the conspiracy to distribute

4

methamphetamine, Esparza would qualify for the safety valve deduction." Sent'g Memo at p. 3.

16. Further, Esparza was not being given proper credit for his cooperation with law enforcement, especially since Esparza had convinced Ojeda to enter a guilty plea.

**B. Petitioner's Allegations of Ineffectiveness.**

17. By Motion filed pursuant to 28 U.S.C. § 2255, Mr. Esparza has alleged that I was ineffective in my representation of him, in both the district and appellate courts.

18. By Order filed July 27, 2007 the Honorable Susan O. Mollway ordered that Mr. Esparza's attorney-client privilege is waived for purposes of this case.

19. Mr. Esparza has alleged the ineffective assistance as follows:

> "Counsel was ineffective by allowing the court to enhance Petitioner above the statutory maximum allowed by law."

Petition, p.7, ¶ 12A, Ground One.

> Counsel was ineffective for failing to investigate the law and facts.

Petition, p.7, ¶ 12B, Ground Two.

20. Additionally, Mr. Esparza alleged that I didn't raise these issues on direct appeal because I represented him in both the district and appellate courts.

> I contend the reason for not raising the claims is because of ineffectiveness of appellate counsel, and because no alternate attorney was appointed for appeal, the claims of

5

ineffectiveness, or issues were raised by the same attorney whom ineffectiveness is alleged against, and would not raise his own ineffectiveness.

Petition, p.8, ¶ 13.

21. With respect to Ground One, in the memorandum which accompanies his Petition, Mr. Esparza set forth the "facts of the case" as follows:

> The Court set the boundaries at an offense level 35, criminal history category I, and correctly set the standards, COUNT I of ten years to life; Count V, the court incorrectly set forth, which is under 21 USC § 844(a), which is a maximum of one year imprison, while the Court alleged ten years.[1] S.Tr. at 26-27. Count IV was a five year sentence, run consecutively to Counts I and V, above. These time tables, because at the time Booker was out, gave the Court authority of a maximum mandatory sentence 120 months, plus 60 months, for a total of 180 months.

Memo., p. 1-2.

> The court went outside the maximum, and started at 168 months and added the 60 months. S.Tr. At 32-33. Although counsel did attempt to explain the harsh draconian laws of a twenty year term, the court again correctly stated that "the min--minimum [mandatory] he can go away for by statute is 15 years," S.Tr. at 34, counsel claims 18 USC § 3553 applies to this, without raising any of the factors § 3553(a) authorizes for departures. S.Tr. at 34.

22. In the Ground One argument in his memo, Mr. Esparza alleges that:

> [he] was a first time offender, had no prior, yet was sentenced to the same term of incarceration as his co-defendant ... yet the Court went beyond the statutory maximum without setting forth any ""'substantial and compelling reasons.'" ....

---

[1] Count V charged an offense under 18 USC § 922(g)(3); charges under 21 USC § 844(a) were superseded, then dismissed.

6

> Here, law afforded a statutory minimum of ten years under 21 USC § 841(b)(1)(A), which equates to 120 months. Section 844(a) affords only add one year sentence of incarceration, unless other factors were brought, which were never placed on the record of these factors existing. Instead of the 120 months, plus the 60 months for the weapon, the Court **enlarged the sentencing minimum by law** to 168 months, without any justification. Instead of showing Petitioner was due such a harsh sentence, the same as his cop-defendant who had a prior and was illegally in the US, based on Petitioner's actions, the court imposed a heavier sentence by extending beyond the statute of ten years, increasing the sentence from 120 months mandated by statute, to 168 months by guidelines. ...

(emphasis added).

23. Regarding Ground One, Esparza reiterated in the Declaration accompanying his Petition that:

> VIII. ... [I]t doesn't seem right one who is a first timer, be punished to the same as those who have done more wrong, and I feel I was prejudiced and discriminated against and the counsel never spoke up for this, and I feel my sentence is far excessive by law given all factors.

24. With respect to Ground Two, in the memorandum which accompanies his Petition, Esparza set forth "facts of the case," including that arguing for a mitigating downward role adjustment was irrelevant and that:

> Pertinent factors counsel never addressed to the Court, such as this was Petitioner's first offense; that Petitioner was a father, and lacked some education.
> ...

"On appeal, ... counsel raised whether the plea agreement was rendered voluntarily and knowingly," instead of arguing the issues Esparza wanted argued on appeal.

The same counsel defended Petitioner on appeal as did at the

7

plea and trial stage, and Petitioner was not allowed to raise the claim of the enhanced sentence because of this counsel.

25.  In the Ground Two argument in his Memo, Esparza alleges, inter alia, that I was ineffective for failing to investigate the law and facts relating to the charges or his sentence, failing to challenge the indictment, and for "allowing" him "to be sentenced above the statutory maximum, without anything on the record indicating why the court was using such a enhancement[,]" and "allowing" him to be sentenced to the same term as his co-defendant, when Esparza was a first time offender, without arguments "under § 3553(a)[,] ... failing to bring this to the court's attention[.]" Esparza alleges that it was ineffective not to produce more evidence at sentencing to support the mitigating role argument, particularly with regard to the "Ojeda" letter.  Further, Esparza argues, I failed to raise, on appeal, a speedy trial issue or other issues he requested be raised on appeal.  **See,** Memo p. 7-9, ¶¶ a-j.

> The matters of counsel are important.  For example, counsel raised the letter at sentencing for a downward departure, yet, took no attempt to obtain evidence of prior conduct of the same nature that co-defendant Ojeda had done to others, who took the blame for him based on a promise he'd take care of them and their family, and never did.

Memo at p. 9.

With regard to the Ojeda letter Esparza claims that I:

was instructed of another person that Ojeda had previously made the same type of promises as was in the letter the lawyer used at sentencing; that the person had pled based on

8

> those promises, and Ojeda had breached the agreement and the person was willing to testify to those facts, which would have strengthened counsel's claim that the letter was from Ojeda, not Petitioner. ...

Memo at p. 11.

26. Regarding Ground Two, Mr. Esparza further alleges in the Declaration accompanying his Petition that [III-IV] I failed to sufficiently investigate his childhood, cultural assimilation, and parental situation as relevant to sentencing, [V] rarely visited Esparza and didn't keep him informed so that he had "no real idea on what was occurring in [his] case[,]" and that [VI] his speedy trial rights were being violated.

## C. **Counsel's Response to Allegations of Ineffectiveness**.

27. Esparza's Ground One is based on a presumed **identity** of meaning between mandatory "minimum" and the "maximum" sentence allowed. He avers that the court "correctly stated" the statutory range on Count I as 10 years to life, but then assumes that the court "started in excess of the "maximum" at 168 months, then added 60 consecutive months for Count IV. When the court "correctly stated" that the mandatory minimum was 15 years, defendant interprets this to mean 15 years is the maximum for Counts I (mandatory minimum 10 years) plus the mandatory five year consecutive sentence for Count IV.

At sentencing this was thoroughly argued. **See**, Sent'g Tr. 20May05 at 30-45. Further, although the court declined to grant a downward departure under the guidelines for a mitigating role,

I argued strenuously pursuant to all of the 3553(a) factors that the **appropriate** sentence for Esparza was closer to the statutory mandatory minimum of 120 months than the 168 months the court imposed. Tr. 20May05 at 32, 38-39. Instead, the court imposed the minimum possible sentence within the court's chosen guideline range. Tr. 20May05 at 42-43.

27. Far from failing to speak up for Esparza's status as a first time offender, I argued at sentencing (and in my written objection to the draft PSR) that Esparza did deserve a guideline adjustment. Tr. at 7-25. The court declined to agree, given the statutory realities as set forth above; that does not make Esparza's sentence "far excessive by law[.]"

28. The record of my representation as set forth above -- arguing for mitigating role and for sentence closer to the mandatory minimum of ten years -- refutes the "facts" Esparza has alleged in his Memo related to Ground Two. There was no "enhanced sentence" in "excess of the statutory maximums" to be appealed. The challenge to the "voluntariness" of Esparza's guilty plea related to Esparza's understanding of the court's reading of the charges in the indictment at the plea colloquy; only by challenging on appeal the effectiveness of the plea waiver in Esparza's PA could we challenge Esparza's sentence on appeal.

29. Other Ground Two responses:

   a. To put it succinctly, Esparza got an additional four years (48 months) above the statutory mandatory minimum he contests here because he posed for a photograph "showing off" with guns. This caused the government to believe Esparza was more involved with weapons than the rest of the evidence otherwise showed.

   b. Esparza never wanted to go to trial; he always wanted to plead guilty. I had to prepare for trial -- which was continued on at least two occasions -- because the government refused to accept Esparza's solo plea without inclusion of the AK-47 gun charge (which was dismissed pursuant to the plea agreement ultimately entered.)

   c. Regarding the Ojeda letter, I didn't get the letter from the government until the date of sentencing. Esparza didn't tell me about "other names" relevant to the letter; there was no one to subpoena. In any case, Esparza's description of the letter as "maybe that's Ojeda's style" was not enough to call witnesses to identify the letter as being from Ojeda.

   d. Esparza didn't tell me anything about bank deposits or bank transactions I could use; as far as I knew, Esparza kept his money in his house, not a bank.

   e. Nor did Esparza tell me of anything in his

11

childhood background which would have been helpful or relevant to sentencing

 f. No matter how much Esparza cooperated the AUSA continued to argue that he was not credible. Further, the AUSA didn't credit Esparza with the arrests that I believe arose out of Esparza's cooperation, not matter how "incredible" the AUSA deemed him. Therefore, Esparza couldn't get a 5K downward departure because the government wouldn't make the appropriate motion. I argued strenuously that Esparza was much less culpable than Ojeda and should not be sentenced to more that the mandatory minimum; the court disagreed.

 g. Finally, I explained to Esparza that trial issues such as violation of "speedy trial" rights are waived by a plea agreement. (Similarly, closing one's eyes while listening to the debriefing agents drone on and on over the same material would be another issue waived by a subsequent plea agreement.)

D. **Conclusion**.

30. Esparza's 2255 Petition is based solely on his misinterpretation of the statutory minimums and maximums and their operations vis-a-vis the guidelines. Although Esparza's sentence was greater than the statutory mandatory minimum, it was not "enhanced" above the statutory limits; I could not argue otherwise, at sentencing or on appeal.

I declare under penalty of law that the foregoing statements are true and correct to the best of my knowledge.

DATED:   Honolulu, Hawaii, August 27, 2007.

*/s/ Arthur E. Ross*
ARTHUR E. ROSS

13